UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JULIE SPAULDING,

                    Plaintiff,

    vs.                                                   Case No. 18-cv-377

TRI-STATE ADJUSTMENTS, INC.,

                    Defendant.

---

BRYANT SPAULDING,

                    Plaintiff,

    vs.                                                   Case No. 18-cv-826

TRI-STATE ADJUSTMENTS, INC.,

                    Defendant.

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

## INTRODUCTION

      The Fair Debt Collection Practices Act ("FDCPA") was enacted due to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Congress found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress also found that there was a proper way in which debts could be collected as "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." *Id*. at § 1692(c). The

FDCPA was created to eliminate these abusive practices, to level the playing field, and to protect consumers. *Id*. at § 1692(e).

## LEGAL STANDARD

The moving party is entitled to Summary Judgment as a matter of law if no genuine issues of material fact exist. Fed. R. Civ. P. 56(c). A genuine issue of material fact only exists if there is evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In viewing the record and evidence, the Court must draw all inferences in the light most favorable to the non-moving party to determine the existence of genuine issues of material fact. *Schultz v. Gen. Elec. Capital Corp*., 37 F.3d 329, 333 (7th Cir. 1994). There is not a genuine issue of fact if the "record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## ARGUMENT

### THRESHOLD ISSUES

The FDCPA requires a consumer, a debt collector, and consumer debt. These threshold issues are not in dispute, as they were not contested in the answers that Tri-State filed in the proceedings. Plaintiffs' Proposed Material Facts ("PPMF") ¶¶ 1-4.

### JULIE SPAULDING

Julie Spaulding's claims are based solely on events that transpired during recorded telephone calls, which means that there are no facts in dispute as to what was said. Mrs. Spaulding moves for summary judgment on the grounds that Tri-State violated the FDCPA by attempting to collect an amount greater than owed, by falsely informing her that a judgment

2

would be entered against her at the return date for the small claims matter, and by falsely implying that she could be garnished if the bills were not paid prior to the return date.

**I.  Tri-State's specific actions**

    **a. Tri-State falsely informed Mrs. Spaulding that a judgment would be entered against her at the return date for the small claims matter.**

On April 2018, Radiology Associates of Wausau SC filed a small claims complaint against the Spauldings. *Id.* ¶ 5. The return date was set for May 23, 2018. *Id.* ¶ 6. On May 4, 2018 Mrs. Spaulding had her first in a series of four conversations with representatives from Tri-State as she tried to figure out what medical bills Tri-State was attempting to collect on and what was actually owed on those bills. In that first conversation, Kelly, the Tri-States representative falsely informed Mrs. Spaulding, "[The full balance] would need to be paid in full prior to the court date with guaranteed funds in order to stop the judgment. Otherwise it would be … entered." *Id.* ¶ 7. Mrs. Spaulding replied, "Well, that's what we're trying to avoid is the judgment getting entered."

Fast forward to May 11, 2018, and Mrs. Spaulding and Kelly were having another conversation. Kelly once again falsely informed Mrs. Spaulding regarding the judgment process, "Yeah, unless the account's paid in – all the balance is paid in full prior to the court date with guaranteed funds, the judgment would be entered if it wasn't paid, so –." *Id*.

The court date that Kelly was referring to was the return date for a small claims matter in Marathon County. Pursuant to Local Rule of Marathon County Circuit Court, § 4.71, if the defendant does not appear on the return date, then default judgment is entered. Small claims trials are to "be scheduled before the court commissioner two weeks after the return date, or as soon thereafter as the court commissioner's calendar will allow. *Id*. at § 4.75. Other than if the

defendant fails to show, the rules do not contemplate a judgment automatically being entered on the return date.

### b. Tri-State falsely implied that Mrs. Spaulding could be garnished if the bills were not paid prior to the return date.

Piggybacking on the false statement regarding a judgment being entered, Kelly took the conversation a further step in the wrong direction when the told Mrs. Spaulding, "[The full balance] would need to be paid in full prior to the court date with guaranteed funds in order to stop the judgment. Otherwise it would be … entered… Okay. Yeah. **Otherwise, we can set up arrangements to avoid garnishment in the future, after that judgment's entered, but – but a payment wouldn't stop it, right.**" PPMF ¶ 8 (emphasis added). Kelly, in an effort to convince Mrs. Spaulding to pay, was threatening garnishment on a judgment that wasn't going to be entered.

### c. Tri-State attempted to collect an amount greater than Mrs. Spaulding owed.

Tri-State attempted to collect the filing fees as part of what was currently due before the filing fees had been assessed by the court. *Id.* ¶ 9. Additionally, Tri-State was continuing collection on an account that had been paid a week earlier. *Id.* ¶¶ 10-12.

## II. Tri-State's actions violated the FDCPA.

### a. Tri-State's actions violated 15 U.S.C. § 1692e.

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. " 15 U.S.C. § 1692e. While Mrs. Spaulding has shown that Tri-State used false statements in an attempt to collect a debt, the Seventh Circuit requires a showing that a false statement would confuse or mislead an unsophisticated consumer. *Ruth v. Triumph Partnerships*, 577 F.3d 790, 799-800 (7th Cir. 2009). The "unsophisticated consumer" test is an objective one. *Turner v. J.V.D.B. & Assoc.*,

4

330 F.3d 991, 995 (7th Cir.2003). "The unsophisticated consumer is 'uninformed, naive, [and] trusting,' but possesses 'rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences.'" *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (alteration in original) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Additionally, "[a] statement cannot mislead unless it is material." *Hahn v. Triumph P'hips, LLC*, 557 F.3d 755, 758 (7th Cir. 2009). A statement is material if it would "influence a consumer's decision ... to pay a debt..." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). In *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012), the Seventh Circuit held that a dunning letter is false and misleading if it "impl[ies] that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Lox* involved a situation where a letter was sent out threatening the consumer with attorney fees when there was no legal basis for such a statement. *Id*. at 820-21. The court found that the statement was false and that an unsophisticated consumer, who wouldn't know the law regarding attorney fees, would find it misleading and would be "likely to believe a debt collector when it says that attorney fees are a potential consequence of nonpayment." *Id*. at 824–25. Last year, the Seventh Circuit in *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018) found a dunning letter that "falsely implies a possible outcome—the imposition of 'late charges and other charges'—that cannot legally come to pass" was "misleading to an unsophisticated consumer because '[t]his is not the type of legal knowledge we can presume the general public has at its disposal.'" *Id*. at 367 (quoting *Lox* at 826).

Similarly, it would be outside the unsophisticated consumer's knowledge to know that a

5

judgment would not be entered on the return date and that therefore garnishment wasn't imminent. Additionally, an unsophisticated consumer wouldn't know that the court fees were not assessed to a consumer at the beginning of a case, but were only assessed if a judgment was ultimately entered against them. These statements were material, as they were made with the purpose of securing quick payment from the consumer.

15 U.S.C. § 1692e also contains specific conduct that is deemed a violation of the FDCPA. Tri-State violated § 1692e(2)(A) ("The false representation of—the character, amount, or legal status of any debt") by falsely informing Mrs. Spaulding that the legal status of the debt was going to be judgment and then garnishment at the return date. Additionally, this subsection was violated when Tri-State told Mrs. Spaulding that payment of the court fees was due prior to the fees being assessed by the court and when it attempted to collect on the part of the debt that had already been paid. Tri-State violated § 1692e(4) ("The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.") by implying that garnishment would be put in place after the judgment was entered on the return date, even though Tri-State didn't intend to garnish immediately after the return date. Tri-State violated § 1692e(5) ("The threat to take any action that cannot legally be taken or that is not intended to be taken.") by threatening Mrs. Spaulding with a judgment on the return date followed by garnishment, even though legally those actions could not be taken. Tri-State violated § 1692e(10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.") by lying to Mrs. Spaulding

regarding when a judgment would be entered and when a garnishment would start in order to get her to pay right away.

### b. Tri-State's actions violated 15 U.S.C. § 1692f.

15 U.S.C. §1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." In *Turner v. J.V.D.B. & Assoc*. at 995, the Court extended the "unsophisticated consumer test to § 1692f ... [to] effect the same overall purposes of the FDCPA." *Id*. at 997. Since the statute does not contain a definition of "unfair or unconscionable," the Seventh Circuit found that the "plain language of the general provision, when read in the context of the entire text of the statutory provision, including the specific examples of unfair and unconscionable conduct" was to be used. *McMillan v. Collection Professionals Inc*., 455 F.3d 754, 765 (7th Cir. 2006). It was unfair for Tri-State to attempt to collect a debt by lying about the legal consequences of non-payment.

Additionally, Tri-State's conduct violated 15 U.S.C. §1692f(1) ("The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.") by requiring payment of the filing fee as part of what was currently owed, when the filing fee had not yet been assessed by the court.

## BRYANT SPAULDING

Bryant Spaulding's claim is based on the sworn testimony of Tri-State's owner (and Fed. R. Civ. P. 30(b)(6) representative), which means that there are no facts in dispute as to the events giving rise to his claim.

### I. Tri-State did not send the notices required under §1692g.

§1692g, states in relevant part:

**(a) Notice of debt; contents** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
**(1)** the amount of the debt;
**(2)** the name of the creditor to whom the debt is owed;
**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g(a). Here, Tri-States records show that the notice wasn't sent out. Radiology listed the last account with Tri-State on September 26, 2017. PPMF ¶¶ 14-15. Tri-State doesn't send out letters on an account until the client has listed the account. *Id.* ¶ 13. On October 9, 2017, Tri-State first spoke with Mr. Spaulding regarding the accounts it was collecting on, including the account received from Radiology the month prior. *Id.* ¶ 16. Tri-State did not send any validation letters to the Spauldings on or after September 26, 2017. *Id.* ¶ 17. Since no letters were sent after it received the account, no validation letter was sent with the requirements listed above.

The Seventh Circuit is clear that this type of violation is open and shut:

Section 1692g(a) requires debt collectors to disclose specific information… in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion. Section 1692g(a) also does not have an additional materiality requirement, express or implied. Congress instructed debt collectors to disclose this information to consumers, period, so these validation notices violated § 1692g(a).

8

*Janetos v. Fulton Friedman & Gullace, LLP*, 2016 U.S. App. LEXIS 6361, *3 (7th Cir. Apr. 7, 2016).

**TRI-STATE'S DEFENSES**

**I.  Tri-State's violations of the FDCPA as to Mrs. Spaulding were not a result of a *bona fide* error.**

Without articulating policies and procedures it may have in place, Tri-State claims the *bona fide* error defense regarding its actions with Mrs. Spaulding.  J. Spaulding Answer, Dkt. 12, ¶ 36 ("if the Plaintiff [*sic*.] did violate the Fair Debt Collection Practices Act, then it was not intentional and resulted from a bona fide error").  Pursuant to 15 U.S.C. § 1692k(c), "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  The Seventh Circuit provides a three-part test for this defense:

> In order to claim this defense, the burden is on the defendant to show (1) "that the presumed FDCPA violation was not intentional"; (2) "that the presumed FDCPA violation resulted from a bona fide error"; and (3) "that it maintained procedures reasonably adapted to avoid any such error."

*Evans v. Portfolio Recovery Assocs.*, LLC, 889 F.3d 337, 349 (7th Cir., 2018) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

*Intentionality*

Tri-State cannot show that the FDCPA violations were un-intentional, because Tri-State intentionally informed Mrs. Spaulding that a judgment would be entered against her at the return date if she didn't pay prior to the return date and by falsely implying that she could be garnished if the bills were not paid prior to the return date.  Additionally, the court costs were added

9

automatically to the account and claimed as currently due and owing, even before a judgment was entered. Tri-State never explained to Mrs. Spaulding that court costs were assessed by the court post-judgment. Tri-State didn't take any actions to verify Mrs. Spaulding's payment to Radiology, and instead, with the impending court date that it kept threatening Mrs. Spaulding with, waited until it received a fax from Radiology eleven days after the payment. This fax that was received by Tri-State the day before the small claims return date.

### *Good faith error*

Tri-State must show that "its violation resulted from a 'bona fide error,' which the Supreme Court instructs are 'clerical or factual mistakes.'" *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 587 (2010). Judgments, garnishment, and court costs are legal questions, to which the *bona fide* error defense does not extend. As to the fact that Tri-State was attempting to collect on a paid bill, this was not a clerical or factual error, but instead resulted from Tri-State's failure to look into the payment while waiting eleven days for Radiology's fax.

### *Policies and procedures*

Finally, Tri-State cannot show that it has reasonable policies and procedures in place to prevent these violations. "*Jerman* held that mistakes of law are not excused and so rejected the debt collector's legal training as an adequate 'procedure.'" *Leeb* at 900 (quoting to *Jerman* at 628). So even if Tri-State can show that it trains collectors, providing legal training to debt collectors is not enough to gain the protection of the *bona fide* error defense. *Id*. Additionally, Tri-State's policies and procedures regarding judgments do not mention when a judgment will be entered. PPMF ¶ 18. Tri-State has a policy to add the cost of the filing fee to what it claims is currently due and owing from the consumer before the filing fee is assessed by the court. *Id*. ¶

19.  Waiting eleven days for a fax (when the policy is that Radiology will provide payment information within ten days) to receive payment confirmation isn't reasonable, given the fact that 1) the return date on the small claims matter was quickly approaching and 2) Tri-State took the position that judgment and then garnishment would occur at the return date.  PPMF ¶¶ 20-21.  Tri-State injected a false sense of urgency into the scenario, and then failed to take timely action to appraise itself of the entire picture.

Tri-State's position is that its employees handled Mrs. Spaulding's account properly and that if confronted by someone in Mrs. Spaulding's same situation, it wouldn't change anything regarding how the employees handled the issues.  *Id*. ¶ 22.  If the Court finds that Tri-State violated the FDCPA regarding its interactions with Mrs. Spaulding, the only type of error that Tri-State could argue is a mistake of law error, which was foreclosed by the Supreme Court in *Jerman*.

## II.     Tri-State's other defenses are not proper defenses to the FDCPA.

In addition to claiming the *bona fide* error defense as to Mrs. Spaulding's claims, Tri-State argues unclean hands defenses as to both Plaintiffs (J. Spaulding Answer, Dkt. 12, ¶ 37 and B. Spaulding Amend. Answer, Dkt. 8 ¶ 21) and abuse of process against Mr. Spaulding on the basis that the action is "not justified by the underlying legal action." *Id*. at ¶ 22.  Much has already been written regarding abuse of process and unclean hands, and those items are currently under review by this Court.  Response Brief on Motion for Leave, Dkt. 28; Briefs in Support of Judgment on the Pleadings as to Unclean Hands Defense, Dkts. 33, 40.  Plaintiffs adopt and incorporate those arguments here.  Furthermore, Tri-State can offer no proof to support its contention that Plaintiffs have unclean hands or that Mr. Spaulding's claims are abuse of process.  In order to prevail on any defenses, the defendant must be able to offer actual proof beyond

speculative comments. Without actual proof, these defenses have no proper place in this consolidated case.

## **CONCLUSION**

There are no facts in dispute. Tri-State violated the FDCPA as to Mrs. Spaulding by attempting to collect an amount greater than owed, by falsely informing her that a judgment would be entered against her at the return date for the small claims matter, and by falsely implying that she could be garnished if the bills were not paid prior to the return date. Tri-State violated the FDCPA as to Mr. Spaulding by failing to provide a validation notice after first making contact with him. Finally, the defenses asserted by Tri-State do not shield Tri-State from liability under the FDCPA. Plaintiffs ask the Court to find that Tri-State violated the FDCPA and to grant their motion for partial summary judgment, specifically finding that Tri-State violated 15 U.S.C. §§ 1692e, e(2), e(4), e(5), e(10), f, and f(1) as to Mrs. Spaulding, and § 1692g as to Mr. Spaulding.

Respectfully submitted this 12th day of August, 2019.

s/ Heidi N. Miller
Heidi N. Miller, 1087696
HNM Law, LLC
PO Box 26273
Wauwatosa, WI 53226
(414) 306-7000
heidi@hnm-law.com

*ATTORNEY FOR PLAINTIFFS*

12