IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JULIE SPAULDING and
BRYANT SPAULDING,

                                                            OPINION AND ORDER

                         Plaintiffs,

        v.                                                  18-cv-377-wmc
                                                            18-cv-826-wmc

TRI-STATE ADJUSTMENTS, INC.,

                         Defendant.

        The Spauldings brought suit against Tri-State Adjustments alleging violations
of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692.[1]  The
court previously concluded that § 1692k(a)(3) of the FDCPA did not provide an
avenue for a counterclaim, but permitted Tri-State to seek leave of court to expressly
set forth the state-law bases for an award of fees and costs in responding to plaintiff's
lawsuit.  (18-cv-377, dkt. #34 at 6-8, n.3.)  Presently before the court is defendant's
request for leave to amend its counterclaims (dkt. #19), as well as plaintiffs' motion
for judgment on the pleadings as to defendants' unclean hands affirmative defense (dkt.
#32).[2]  For the reasons set forth below, both motions will be granted.

---

[1] In fact, plaintiffs each filed a separate lawsuit against defendant, but the court consolidated the
two cases.  (*See* 18-cv-377, dkt. #34.)

[2] Throughout this opinion unless otherwise noted, the court will cite only to the docket entries filed
in the 18-cv-826 case.

OPINION

## I.  Defendant's Motion to Amend the Counterclaim

Defendant seeks to amend its counterclaim to seek fees and costs incurred in litigating these cases, as well as damages for "loss of potential business" through a claim for abuse of process.  (Mot. to Am. (dkt. #19) 1-2.)  The parties agree that the appropriate standard for permitting the amendment is whether the proposed counterclaim would survive a motion to dismiss.  (Mot. to Am. Opp'n (dkt. #28) 1; Mot. to Am. Reply (dkt. #31) 1.)  Plaintiffs argue that defendant should be denied leave to amend and refile its counterclaim on two grounds: (1) plaintiffs are litigating under the FDCPA "for the exact reason it was enacted," such that defendant's characterization of their damages as "fabricated" only implies "a bad motive or improper purpose," which is not enough to establish abuse of process (Mot. to Am. Opp'n (dkt. #28) 3-4); and (2) the "counterclaims rest completely on speculation" because defendant could not know either Spaulding's intent or knowledge (*id.* at 5-8). In response, defendant contends that it has adequately pleaded an abuse of process claim based on plaintiffs' behavior and reasonable inferences to be drawn therefrom. (*See generally* Mot. to Am. Reply (dkt. #31).)

The Wisconsin Supreme Court has explained that "the two elements of the tort [of abuse of process] are: (1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process," such that "[t]he plaintiff must allege and prove that something was done under the process which was not

2

warranted by its terms." *Strid v. Converse*, 111 Wis.2d 418, 427, 331 N.W.2d 350 (1983) (citing and quoting *Thompson v. Beecham*, 72 Wis.2d 356, 362-63, 241 N.W.2d 163 (1976) (internal quotation marks omitted)).  The first "element requires evidence of '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process,'" meaning that "'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Schmit v. Klumpyan*, 2003 WI App 107, ¶ 7, 264 Wis.2d 414, 663 N.W.2d 331 (quoting *Thompson*, 72 Wis.2d at 362).[3]

The second element "requires evidence of 'coercion to obtain a collateral advantage, not properly involved in the proceeding itself,' or of use of the process 'to effect an object not within the scope of the process,' or of any other improper purpose." *Id.* ¶ 8 (quoting *Thompson*, 72 Wis.2d at 363; *Brownsell v. Klawitter*, 102 Wis.2d 108, 113, 306 N.W.2d 41 (1981)).  A collateral advantage is a benefit that the process was not designed to secure.  *Id.* ¶ 9.  Thus, the tort can be "characterized as an attempt to use process as a means of extortion."  *Id.* (citing Restatement (Second) of Torts § 682 cmt. b (Am. Law Inst. 1977)). In this way, abuse of process can exist even where "legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose

---

[3] The Wisconsin Court of Appeals concluded in *Schmit* that an abuse of process claim could not be sustained because the partition action was used for an authorized purpose. In particular, the court found no evidence that the plaintiff sought to pressure or extort defendant into doing something other than selling the jointly owned property, which is a legitimate goal of a partition action.  2003 WI App 107 ¶ 25.

for which it was not designed." *Strid*, 111 Wis.2d at 426 (quoting *Maniaci v. Marquette Univ.*, 50 Wis.2d 287, 299, 184 N.W.2d 168 (1971)).  On the other hand, "the entirely justified prosecution of another . . . does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm."  *Schmit*, 2003 WI App 107, ¶ 11 (quoting Restatement (Second) of Torts § 682 cmt. b); *see also Schlafer v. Quality Concrete Prods.*, 170 Wis.2d 343, 492 N.W.2d 187 at *3 (Ct. App. 1992) (unpublished table decision) ("The normal prosecution of a civil lawsuit, whatever the motivation, is not an abuse of process, even if the conduct may be considered outrageous by many.  A complaint does not state a claim for abuse of process if it merely alleges that the defendant maliciously brought a false lawsuit to harm the plaintiff." (internal citations omitted)).

With these two elements in mind, defendant will be permitted to amend its counterclaim to assert claims for abuse of process against both plaintiffs. Generally, defendant's amendment alleges that plaintiffs are misusing process to "extort[] a collateral advantage in the form of fabricated damages" by: (1) "willful and deliberate acts" to induce defendant to violate the FDCPA; and (2) "deliberately filing this false claim." (Proposed Am. Counterclaims (dkt. #19-1) ¶¶ 2, 101, 114.)  More specifically, defendant lays out sufficient facts to infer that plaintiffs have "perverted" the legal process "to accomplish an ulterior purpose."  *Strid*, 111 Wis.2d at 426 (quoting *Maniaci*, 50 Wis.2d at 299).  Even more specifically, defendant alleges that the Spauldings failed to pay a debt to Radiology Associates of Wausau, SC, for services

rendered in 2015 and 2017.  Moreover, once their account was placed with Tri-State for collection, Tri-State mailed a Notice of Debt letter for each of the three accounts. In February 2017, one of the plaintiffs accessed an online resource to verify the amount of the debt, using information contained in one of the Notice of Debt letters.  From that, a reasonable inference can be drawn that at least by then one or both plaintiffs knew about the claimed debt and chose not to dispute it actively at that time.

Next, on October 9, 2017, Tri-State also spoke with Bryant on the phone about the debt.[4]  Bryant again did not object to the assertion of the debt, but rather asserted that his wife would return the call because she handled the bills.  Julie did not call back.

On February 22, 2018, defendant then mailed plaintiffs a FDCPA Notice letter, giving them 30 days to dispute the debt.  Plaintiffs once again chose not to do so, prompting defendant to file a small claims action in Marathon County seeking $1,002.11 (the amount owed, interest and court costs) in late April 2018.  However, by late March or early April 2018, Bryant finally filed an objection to his credit report, claiming that: the Tri-State accounts were "Never Mine"; "[t]here is no contract or agreement to pay this account"; and "[t]his account wasn't reported in full." (TransUnion Obj. (dkt. #19-12) 1.)

In a number of May 2018 telephone conversations with Julie, Tri-State alleges that she nevertheless attempted to induce defendant to violate the FDCPA by: (1) repeatedly claiming to lack knowledge of the debt and its amount, despite previous

---

[4] Given that the plaintiffs share a last name, the court will refer to them by their first names.

communications; (2) offering conflicting statements about whether she was represented by counsel in the small claims matter; (3) asking Tri-State to email her information; (4) making payment to the original creditor, despite knowing payment was to be made to Tri-State; and (5) inquiring about an outstanding balance without noting a pending payment.  The day after the last of these phone calls, Julie filed suit alleging violations of the FDCPA.  Tri-State further alleges that Bryant "was aware and had knowledge that his wife . . . had planned and made numerous attempts to induce the Defendant to violate the FDCPA."  (Proposed Am. Counterclaims (dkt. #19-1) ¶ 79.)

Five days after Julie filed suit in this court, the Marathon County small claims hearing was adjourned due to concerns about whether the Spauldings were represented by counsel, the total amount owed, and the federal lawsuit.  Months later, at a July 18, 2018, hearing on the small claims matter, Julie then disputed the amount owed, so the court scheduled trial for August 9.  Right before trial was scheduled to begin on the small claims matter, plaintiffs' counsel here negotiated a settlement, but never entered an appearance there.

In July 2018, Bryant filed a second objection to his credit report, again challenging the Tri-State accounts.  In the objection, he claimed: "I don't know this company"; "Not my account"; "[i]nsurance paid this after it was a collection"; and "Never had any account with this company."  (Equifax Obj. (dkt. #19-13) 1.)  Each of these claims were allegedly knowingly false.  The following month, in August 2018, as part of a discovery response in Julie's case, defendant provided documentation

demonstrating when the Notice of Debt letters were sent.  In October 2018, Bryant filed suit attacking Tri-State for delay in sending required disclosure letters following the October 9, 2017, phone call.  Again, defendant alleges that the allegations in Bryant's complaint are false, and Bryant knew they were false when he filed suit.

In sum, defendant has alleged that plaintiffs intentionally sought to coerce it into violating the FDCPA through a pattern of dishonest and misleading statements and actions for the purpose of creating a claim for statutory damages. If so, this is not, as plaintiffs claim, an attempt to use "the FDCPA for the exact reason it was enacted." Defendant also indicates that the filing of Julie's lawsuit was intended to alter the small claims proceedings in Marathon County. Accordingly, defendant's motion is granted.[5]

## II. Plaintiffs' Motion for Judgment on the Pleadings

Also before the court is plaintiffs' motion for judgment on the pleadings on defendant's unclean hands affirmative defense.  Under Rule 12(c), "a party may move for judgment on the pleadings" once "the pleadings are closed -- but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is reviewed under the same standard as Rule 12(b)(6), except that the court considers all pleadings, as well as documents that are incorporated into any pleading by reference.

---

[5] Plaintiffs' alternative, apparent objection that defendant could not actually know what they knew or thought is perhaps literally true, but pointless, since it appears that the facts alleged, if true, would support an inference as to plaintiffs' knowledge.  Moreover, this is an appropriate area for discovery, recognizing the difficulty defendant may have in collecting relevant evidence, or ultimately prevailing as to its allegations of plaintiffs' knowledge or intent.

*See Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) ("A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." (citing *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To succeed on a motion for judgment on the pleadings, "the moving party must demonstrate that there are no material issues of fact to be resolved," even when viewing all facts in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

Plaintiffs' argument is simply that unclean hands, as an equitable defense, is inapplicable to the FDCPA, which is a strict liability statute. (Mot. J. Pleadings Br. (dkt. #33) 2.) Defendant practically concedes this point, arguing that while the unclean hands defense "may not be viable against an FDCPA violation, it is a viable defense under Wisconsin law." (*See* Mot. J. Pleadings Opp'n (dkt. #37) 8.) Notably, neither plaintiff brought any Wisconsin claims -- they only allege violations of the FDCPA. (*See* Am. Compl. (18-cv-377, dkt. #9) 4-5; Compl. (18-cv-826, dkt. #1) 3-4.) The rest of defendant's opposition misconstrues the scope of plaintiffs' motion, arguing that plaintiffs are not entitled to judgment as a matter of law on their or defendant's claims, again ignoring that the unclean hands defense has no application

to the FDCPA claims now before this court.[6]  Accordingly, plaintiffs' motion is granted. *Cf. Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL 1227791 (N.D. Ill. Mar. 15, 2019) (*sua sponte* granting summary judgment for plaintiff on defendant's unclean hands defense because the defense was not available).

ORDER

IT IS ORDERED that:

1) Defendant's motion for leave to amend the counterclaim (dkt. #19) is GRANTED.

2) Plaintiffs' motion for judgment on the pleadings on defendant's unclean hands defense (dkt. #32) is GRANTED.

Entered this 23rd day of August, 2019.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

---

[6] Defendant also spends a significant amount of time arguing that its unclean hands defense is "directly linked" to the proposed amended counterclaim.  (*See* Mot. J. Pleadings Opp'n (dkt. #37) 8-12.)  However, affirmative defenses and counterclaims are different.  *Compare Affirmative Defense*, Black's Law Dictionary (11th ed. 2019) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if the allegations in the complaint are true.") (defined under defense) *with Counterclaim*, Black's Law Dictionary (11th ed. 2019) ("A claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim.").