JULIE SPAULDING,

                          Plaintiff,                    OPINION AND ORDER

    v.
                                                        18-cv-377-wmc

TRI-STATE ADJUSTMENTS, INC.,

                          Defendant.

---

BRYANT SPAULDING,

                          Plaintiff,                    OPINION AND ORDER

    v.
                                                        18-cv-826-wmc

TRI-STATE ADJUSTMENTS, INC.,

                          Defendant.

---

In these consolidated cases, plaintiffs Julie Spaulding and her husband Bryant Spaulding each allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by defendant Tri-State Adjustments, Inc. In turn, Tri-State counterclaimed, alleging abuse of process by both Julie and Bryant. Plaintiffs have moved for summary judgment on their FDCPA claims, as well as on defendant's counterclaim. Defendant has also moved for partial summary judgment as to one of plaintiffs' FDCPA claims. For the reasons set forth below, the court will deny plaintiffs' motion for summary judgment as to their FDCPA claims, grant plaintiffs' motion for summary judgment as to defendant's counterclaim, and deny defendant's motion for partial summary judgment.

UNDISPUTED FACTS[1]

Defendant Tri-State Adjustments, Inc. ("Tri-State") is a debt collection company. Between 2015 and 2017, Radiology Associates of Wausau SC ("Radiology Associates") referred three debt accounts purportedly owed by plaintiffs Julie and Bryant Spaulding to Tri-State for collection.[2]  The parties dispute whether Tri-State sent the Spauldings a written notice for all three debts, which will be addressed in greater detail below.  However, Tri-State spoke with Bryant Spaulding on the phone on October 9, 2017, in an attempt to collect on the Spauldings' debts.  During that call, Bryant advised that his wife, Julie, generally takes care of the bills, and she would call Tri-State back later.  In fact, Julie did not call Tri-State back.

A few months later, on February 22, 2018, Radiology Associates sent a letter to the Spauldings notifying them of their debts and giving them thirty days to dispute those debts.  After the Spauldings failed to dispute the debts as instructed, Radiology Associates filed a small claims complaint against the Spauldings in Marathon County Circuit Court on April 23, 2018.  The Spauldings received a formal Summons and Complaint for this action, which noted that the "return date" for the case was set for May 23, 2018.

Between May 4, 2018, and May 17, 2018, Julie then had four follow-up phone conversations with various Tri-State representatives.  Each of these phone conversations was recorded and transcribed; neither party disputes the accuracy of the transcripts.

---

[1] Unless otherwise noted, the following facts are deemed material and undisputed as drawn from the parties' proposed findings and responses, as well as the underlying evidence of record.

[2] Given that the plaintiffs share a last name, the Spauldings are referred to individually by their first names for the remainder of this opinion.

In the first phone call on May 4, 2018, Tri-State called Julie after she had left a voicemail with Radiology Associates. The most relevant part of the conversation is recounted below:

> [Julie:] So, the $883.61, is that . . . the whole amount, is that in collection.
> [Tri-State:] Ah, so there's actually additional court costs that have been added because it looks like a suit was filed.
> . . .
> [Julie:] [C]an this be taken care of before court, like can there be some payment plan or something or --
> . . .
> [Tri-State:] Ah, no, as far as court goes . . . the balance of the . . . legal portion here, the $1,002.11, that would need to be paid in full in our office at least two days prior to court with guaranteed funds . . . .
> [Julie:] Okay. So, it would be a full balance?
> [Tri-State:] Yes, it would need to be paid in full prior to the court date with guaranteed funds in order to stop the judgment. . . . Otherwise, it would be entered --
> [Julie:] Then I won't pay anything on it today.
> [Tri-State:] Okay. Yeah. Otherwise we can set up arrangements to avoid garnishment in the future, after that judgment's entered, but -- but a payment wouldn't stop it, right.

(Addis Decl., Ex. A (dkt. #50-1) 3-9.) On May 8, 2018, Tri-State again called Julie in response to another message she had left with Radiology Associates. During that call, Julie informed Tri-State that she would have her attorney call Tri-State back.

On May 11, 2018, Julie next made a payment of $504.06 directly to Radiology Associates. Later that same date, Julie called Tri-State:

> [Julie:] So, I need to talk to somebody about our account here. We got this Summons & Complaint and um, I talked to the Radiology Associates and . . . they said that the only thing that they have is a $504.06, and I just got done paying that with them. . . . But, I'm confused because the Summons & Complaint is for . . . $883.61.

3

. . .

[Tri-State:] Okay. They never reported a payment on it . . . .

[Julie:] I just did it like ten minutes ago, so --

[Tri-State:] Okay. . . . So, I can note that you paid the $504.
. . . You said you paid the $504?

[Julie:] Right. . . .

[Tri-State:] Okay. And if that is for the account we have here,
that would be applied, but we still do have a remaining balance
after that payment would go through, if that was to be applied
here.

. . .

[Tri-State:] Okay. . . . if we assume that you did pay the
$504.06, there'd still be a balance of $944.15.

. . .

[Tri-State:] Okay. $329.78, that's principal balance so -- I
mean, there's court costs and interest on -- on the accounts as
well. So, the -- the payoff to stop any judgment -- if we can
confirm the $504.06 is $488.80.

. . .

[Julie:] So, $883.61 plus $118.50, and that would still be
added, even if the case is settled before that?

[Tri-State:] Yes, because it's -- the court cost is added when
it's filed, so --

. . .

[Tri-State:] Yeah, unless the account's paid in -- all the balance
is paid in full prior to the court date with guaranteed funds,
the judgment would be entered if it wasn't paid . . . .

(Addis Decl., Ex. A (dkt. #50-1) 13-28.)

Julie again called Tri-State on May 17, 2018. During that conversation, she asked

what the account balance was, and Tri-State again informed her that it was $1,002.11.

The Spauldings have never disputed with Tri-State or Radiology Associates that the

principal amount of the debts owed plus interest totaled $883.61.


OPINION

Summary judgment shall be granted if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). In evaluating the record, the court must construe all evidence in the light most favorable to the party opposing the summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).

In this lawsuit, plaintiffs have alleged that Tri-State violated numerous sections of the FDCPA. Specifically, plaintiffs claim that Tri-State: failed to send notices as required under 15 U.S.C. § 1692g; used unfair and unconscionable means to collect a debt in violation of § 1692f and § 1692f(1); and made false and misleading statements in violation of § 1692e and its subsections. Plaintiffs have moved for summary judgment on all of three of these claims, which defendant opposes, while defendant has cross-moved for summary judgment as to the notice claim under § 1692g only.

As an initial matter, both parties agree that the Spauldings are "consumers" and Tri-State is a "debt collector" within the meaning of the FDCPA. *See* § 1692a(3), (6). Accordingly, the court will take up the substance of the parties' motions as to each of plaintiffs three claims in order, then turn to defendant's alleged bona fide error defense and abuse of process counterclaim, on which plaintiffs have also moved for summary judgment.

## I. FDCPA Claims

### A. Notice Requirement Under § 1692g

The FDCPA requires debt collectors to send written notices to consumers in connection with attempts to collect on a debt. Specifically, § 1692g provides in relevant part that "[w]ithin five days after the initial communication with a consumer in connection

with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication . . . send the consumer a written notice."  The notice must contain, inter alia, the amount of the debt owed and a statement that the consumer may contest the debt within thirty days of receiving the notice.  § 1692g(a).  It therefore follows that, even if a debt collector had previously sent the debtor a validation letter, when a new debt arises a debt collector must send a new validation letter prior to or within five days of any initial communication regarding that new debt.

Here, Radiology Associates referred three debts owed by the Spauldings to Tri-State for collection; the first debt amounted to $271.93, the second $57.85, and the third $504.06.  Plaintiffs do not appear to dispute that the Spauldings received validation notices for the first two debts, arguing only that a validation notice was not properly sent for the $504.06 debt.  Specifically, plaintiffs argue that Tri-State attempted to collect on the $504.06 debt during the October 9, 2017, phone call with Bryant yet did not send a written debt validation letter before or within five days of the call.

Defendant asserts that it sent a debt validation letter for the $504.06 debt on August 22, 2017 -- well before the October 9 phone call.  To support its assertion, defendant points to a Tri-State record entitled "Debtor Profile -- Notices Information," which includes the following chart:

| CODE | ACCOUNT NUMBER | LOC | DATE | STATUS | CAUSE | PER | AMOUNT |
|------|----------------|-----|------|--------|-------|-----|--------|
| CK1 | | F | 06/24/2015 | Sent(D) | NB | | $271.93 |
| CK1 | | F | 11/25/2015 | Sent(D) | NB | | $57.85 |
| #1ALL | | F | 07/25/2016 | Sent(D) | NB | | $419.70 |
| T33 | | F | 07/25/2016 | Sent(D) | User | MEER | $344.91 |
| T33 | | F | 08/30/2016 | Sent(D) | User | CHTO | $766.30 |
| CK1 | | F | 08/22/2017 | Sent(D) | NB | | $504.06 |
| T33 | | F | 11/01/2017 | Sent(D) | User | RAWI | $1,316.79 |
| ST1 | | F | 11/21/2017 | Sent(D) | User | KK | $874.70 |
| WSUIT | | F | 12/15/2017 | Sent(I) | User | LA | $877.44 |
| PR1 | | F | 01/11/2018 | Sent(D) | User | LA | $880.53 |

(Helgeson Dep., Ex. 6 (dkt. #41-1) (highlight added).)[3] Rhonda Helgeson, the president and owner of Tri-State, testified that the code CK1 refers to Tri-State's standard "validation of debt notice." (Helgeson Dep. (dkt. #41) 9.) She further testified that the "date" column reflects the "date those notices were sent," the "status" column reflects the fact that they were sent, and the "amount" column reflects that amount included in the letter. (*Id.* at 10.)[4]

For their part, plaintiffs make the following assertions: (1) Tri-State records show that the "list date" on the Spauldings' $504.06 debt was September 25, 2017 (*see* Helgeson Dep., Ex. 10 (dkt. #41-2) 7); (2) according to Helgeson's deposition testimony, Tri-State

---

[3] Plaintiffs urge the court to reject this evidence, arguing that it was submitted via an affidavit to contradict Helgeson's deposition testimony, and therefore should be disregarded. Generally, a party may not create "sham" issues of fact by submitting affidavits contradicting earlier deposition testimony. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). However, that rule simply does not apply here. The "Debtor Profile" record was an exhibit to Helgeson's deposition (as well as to her affidavit), and when asked about it in her deposition she provided answers *consistent with* those in her affidavit. (*Compare* Helgeson Dep. (dkt. #41) 9-10; Helgeson Decl. (dkt. #51) 2-3.) This record and defendant's interpretation of it, therefore, cannot be said to have been manufactured after Helgeson's deposition for the purpose of creating a "sham" issue of fact. Moreover, plaintiffs themselves rely on this "Debtor Profile" record to show that no debt validation notices were sent after September 25, 2017. (*See* Pls.' Br. (dkt. #45) 8.)

[4] Defendant also points to Bryant's and Julie's own deposition testimony to support their argument. In Julie's deposition, she was shown a CK1 sample letter and asked if she recalled seeing any similar letter; she testified, "I do recall seeing a letter like this . . . I would say years prior . . . likely possibly a year prior to the lawsuit." (Julie Dep. (dkt. #54) 37.) In response to a similar question, Bryant simply testified that he never opens the mail; he always leaves it on Julie's desk and he did not know whether he had ever received a written notice from Tri-State. (Bryant Dep. (dkt. #53) 13-14.) Additionally, defendant emphasizes that Tri-State records show that the unique username and password provided in Tri-State's written notices was used to access the Spauldings' online account on February 16, 2017. (Helgeson Dep. (dkt. #41) 5; Helgeson Decl. (dkt. #51) ¶ 13.) This evidence demonstrates beyond reasonable dispute that at least *one* notice reached the Spauldings before the October 9, 2017, phone call. But plaintiffs are not arguing that they *never* received a debt validation letter from Tri-State; rather, they contend only that they did not receive a letter for the $504.06 debt.

does not start collection "until the client has listed the account with [Tri-State]" (Helgeson Dep. (dkt. #41) 3); (3) Tri-State's "Debtor Profile" record shows that no written notices were sent after September 25, 2017 (*see* Helgeson Dep., Ex. 6 (dkt. #41-1) 1); and (4) therefore, Tri-State did not send a written notice regarding the Spauldings' $504.06 debt before or after Tri-State's phone conversation with Bryant on October 9, in violation of § 1692g. Moreover, Julie testified that she recalled seeing a Tri-State notice letter "years prior . . . likely possibly a year prior to the lawsuit," which could support an inference that such a notice was not received a "year" or "years" prior to April 2018, when the lawsuit was filed. (Julie Dep. (dkt. #54) 37.)

The "Debtor Profile" record, therefore, is being offered by both sides for conflicting reasons. On the one hand, defendant argues that the record shows that the written notice for the $504.06 debt was mailed out on August 22, 2017. On the other, plaintiffs argue that the "Debtor Profile" record shows that no notices were sent by Tri-State after September 24, 2017 -- the "list date" of the $504.06 debt -- and therefore, according to plaintiffs, no notice was sent for the $504.06 debt.

Because both parties have moved for summary judgment on this claim, the court will first consider the facts in the light most favorable to defendant in deciding plaintiffs' motion, and next in the light most favorable to plaintiffs in deciding defendant's motion. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). Plaintiffs' motion is easily denied. Viewed favorably, the "Debtor Profile" record and Helgeson's testimony interpreting it could lead a reasonable jury to conclude that a debt

validation letter (the CK1 code in the "code" column) regarding the $504.06 debt (the "amount" column) was sent on August 22, 2017 (the "date" and "status" columns).

Defendant's motion is much stronger. Even viewed in the most favorable light, plaintiffs' denial of receipt of the August 22 notice is tepid at best, with Bryant denying having knowledge either way and Julie acknowledging receipt of similar notices, albeit "likely possibly" six months or more before the August date. Plaintiffs' other evidence relies on ambiguous testimony from Helgeson about when Tri-State generally starts collecting on debts, and never clearly connects her testimony to the September 24, 2017, "list date" record discussed by plaintiffs, much less evidence calling into question defendant's interpretation or the accuracy of the "Debtor Profile" record, which appears to document the sending of an August 22, 2017, notice. Indeed, plaintiffs themselves rely on the "Debtor Profile" record for the proposition that no notice was sent after September 25. Still, although it seems unlikely, the court cannot find a reasonable jury would have to reject the arguable inconsistencies between Helgeson's testimony and defendant's interpretation of its records, particularly in light of Julie's arguable denial of receipt of notice during this period (assuming she were to so testify again under oath at trial). Accordingly, defendant's motion for partial summary judgment as to this claim must be denied.

## B. Means of Collection Under § 1692f & f(1)

Plaintiffs next argue that the court should grant summary judgment on their claims that Tri-State violated §§ 1692f and 1692f(1). Section 1692f generally prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any

debt." The contours of what constitutes "unfair or unconscionable means" under the FDCPA is decidedly blurry. *See Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015) ("Unfortunately, the statute does not define the phrase 'unfair or unconscionable,' and we have called the phrase 'as vague as they come.'") (quoting *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007)). As this court has previously observed, other district courts have held that conduct that is specifically addressed in another section of the FDCPA may not be used as the basis for a § 1692f claim. *See Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 989 (W.D. Wis. 2015) (collecting cases). And the District Court for the Eastern District of Wisconsin recently rejected a § 1692f claim on those grounds. *See Bencomo v. Forster & Garbus LLP*, No. 18-CV-1259-JPS, 2019 WL 3082502, at *5 (E.D. Wis. July 15, 2019) (dismissing § 1692f claim because it was duplicative of another FDCPA claim).

Here, plaintiffs simply assert that "[i]t was unfair for Tri-State to attempt to collect a debt by lying about the legal consequences of non-payment." (Pls.' Br. (dkt. #45) 7.) Since that claim is entirely duplicative of the § 1692e misrepresentation claims addressed below, the court will deny plaintiffs' summary judgment motion on their § 1692f claim.

Plaintiffs also argue that Tri-State violated § 1692f(1) by attempting to collect on Radiology Associates' court filing fee "when the filing fee had not yet been assessed by the court." (Pls.' Br. (dkt. #45) 7.) Defendant acknowledges its attempts to collect the court filing fee during its May conversations with Julie, but argues that having incurred the cost of filing a small claims court action, Tri-State accurately represented its practice *not* to "dismiss a collection lawsuit unless the filing fees are paid in full." (Helgeson Decl. (dkt.

#51) ¶ 24.)

Section 1692f(1) prohibits a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Here, neither party has produced an agreement between the Spauldings and Radiology Associates or Tri-State authorizing collection expenses. However, Wisconsin law provides in a small claims case that the clerk "shall without notice to the parties tax and insert in the judgment as costs in favor of the party recovering judgment" certain costs, including certain court filing fees. Wis. Stat. § 799.25. These costs, therefore, are not up to the discretion of the judge; they are automatically taxed upon the entry of judgment.

Accordingly, this case is factually and legally distinguishable from *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004). In *Shula*, a debt collector filed suit in Illinois state court to collect on a debt; the debtor then paid off the principal amount and the state suit was dismissed; yet the debt collector continued to try to collect on the court costs incurred in filing the state suit. *Id.* at 490. The debtor then filed an FDCPA suit, alleging, inter alia, that the attempts to collect on the court costs violated § 1692f(1) because there was no agreement between the parties and the collection of costs was not otherwise "permitted by law." *Id.* Under Illinois law, when a lawsuit is dismissed, an award of costs is a matter of the judge's discretion; as such, the Seventh Circuit reasoned that it was "absurd to think that [the debtor] ever became obligated to pay the court costs." *Id.* For these reasons, the court explained that absent a "judicial order commanding [the debtor] to pay the costs," the debt collector's letter demanding payment of the costs violated the FDCPA. *Id.* at 493.

11

Here, by contrast, Radiology Associate's collection lawsuit had *not* been dismissed, and if Tri-State had prevailed, an award of costs would have been automatic.[5]

Factually and legally, this case is much closer to the Sixth Circuit's decision in *Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510 (6th Cir. 2014). As here, the Kentucky statute at issue permitted costs to be awarded "as of course to the prevailing party unless the court otherwise directs." *Id.* at 514 (quoting Ky. R. Civ. P. 54.04). As a result, the Sixth Circuit concluded that a debt collector's request for "costs" before the entry of judgment on the principal debt did not violate § 1692f(1) of the FDCPA, reasoning that although "the costs had not yet been awarded by a court . . . neither had interest or the principal amounts, and certainly no argument has been presented that the request for those amounts as 'due and owing' was unfair, false, or deceptive." *Id.* Indeed, "debt" is defined in the FDCPA as meaning certain "obligation[s] or alleged obligation[s] . . . *whether or not*

---

[5] In fairness, the Seventh Circuit did go on to state that "even when a case does go to judgment, so that the winning party has an *entitlement* to an award of costs rather than having to appeal to the judge's discretion . . . a judicial order is still necessary for a debt to arise," this was said in dicta as the state court case in *Shula* had been dismissed and could *not* have gone on to judgment. *Shula*, 359 F.3d at 491 (emphasis added). In this case, at the time Tri-State attempted to collect on the court fees the case was still ongoing and could have proceeded to judgment, at which point Tri-State would have automatically been awarded costs if it had prevailed.

*such obligations[s] ha[ve] been reduced to judgment*." 15 U.S.C. § 1692a(5) (emphasis added).[6]

In a similar case, the District Court for the Northern District of Illinois held that a debt collector could attempt to collect its fee before legally incurred, based on an agreement between the parties in which the debtor committed "to pay what amounts to a 'reasonable advance estimate' of [the debt collector's] costs." *Bass v. I.C. Sys., Inc.*, 316 F. Supp. 3d 1047, 1054 (N.D. Ill. 2018) (emphasis omitted). The court reasoned that any other interpretation would "require a debt collector to make two visits to the consumer: the first to collect the debt (and incur the collection costs) and the second to collect the collection costs." *Id.* The court asked: "How could it possibly harm or mislead the debtor for a debt collector to set forth both amounts (the principal amount due and the collection fee) in a single letter, as opposed to first collecting the original debt and only then revealing and seeking payment of the collection fee?" *Id.* (quoting *Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2017 WL 4948544, at *3 (N.D. Ill. Nov. 1, 2017), *aff'd*, 930 F.3d 891 (7th Cir. 2019)).

So, too, here. Tri-State appears to have accurately stated its practice to insist on collecting the costs incurred in filing suit as permitted by Wisconsin law, and it makes little

---

[6] The Eastern District of New York also held that a debt collector did not violate the FDCPA when it attempted to collect attorney's fees before entry of a court judgment taxing the fees. *See Boyd v. J.E. Robert Co.*, No. 05-CV-2455 KAM RER, 2012 WL 4718823, at *10 (E.D.N.Y. Aug. 27, 2012), *report and recommendation adopted as modified,* No. 05-CV-2455 KAM RER, 2012 WL 4718723 (E.D.N.Y. Oct. 2, 2012). As here, the court in that case specifically distinguished *Shula* on the basis that "the state court had already dismissed the action at the time of the alleged FDCPA violation, [while] here Defendants attempted to collect, and did in fact collect, attorney's fees in the context of a live action in state court." *Id.* However, this case is distinguishable as the New York statute differs from Wisconsin's in a significant way; Wisconsin only awards costs to a *prevailing* party, New York provides that "[a] plaintiff in an action to foreclose a tax lien shall recover reasonable attorney's fees for *maintaining* such action." *Id.* (emphasis added).

or no sense for it to have to wait until formal judgment to pursue payment for its outlay, even if it were willing to negotiate to a reduced charge, just as it could seek accumulating interest. In sum, the court concludes that Tri-State was "permitted by law" to seek collection of court costs actually incurred from the Spauldings, *provided* award by the state clerk of court in the ordinary course was available and, if proceeded to judgment, automatic, rather than subject to the discretion of a state court judge. Therefore, plaintiffs' motion for summary judgment as to this claim is denied. Of course, as discussed below, this does not mean that Tri-State's statements as to its entitlement or the timing of its entitlement to court costs may still have been false and misleading under § 1692e.

### C. False and Misleading Statements Under § 1692e

Finally, plaintiffs argue that during the four phone conversations in May 2018 between Tri-State and Julie, Tri-State violated 15 U.S.C. § 1692e, which generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, plaintiffs claim violations of four subsections of § 1692e, namely: (1) § 1692e(2)(A), prohibiting "[t]he false misrepresentation of . . . the character, amount, or legal status of any debt"; (2) § 1692e(4), prohibiting "[t]he representation or implication that nonpayment of any debt will result in the . . . garnishment . . . of any . . . wages of any person unless such action is lawful and the debt collector or creditor intends to take such action"; (3) § 1692e(5), prohibiting "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"; and (4) § 1692e(10), prohibiting "[t]he use of any false

representation or deceptive means to collect or attempt to collect any debt." Only plaintiffs have moved for summary judgment on these claims.

The Seventh Circuit has held that a false statement by a debt collector does not automatically violate the FDCPA. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009). Rather, the test is whether the statement would mislead an "unsophisticated customer." *See id.* (citing *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643 (7th Cir. 2009)). This is an objective standard. *See Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 677 (7th Cir. 2007).[7] "The unsophisticated consumer is 'uninformed, naive, [and] trusting,' but possesses 'rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences.'" *Id.* (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir.2000)).

Additionally, "a false but non-material statement is not actionable." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009). The Seventh Circuit has reasoned that "the Fair Debt Collection Practices Act is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). This is a "fact-bound determination of how an unsophisticated

---

[7] While defendant argues that the Spauldings are "hardly unsophisticated consumers," citing previous civil lawsuits in which the Spauldings had been named (Def.'s Opp'n (dkt. #65) 10), that fact, even if true, does not change the application of an unsophisticated consumer standard to claims under § 1692e.

consumer would perceive the statement." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016).

Here, plaintiffs argue that Tri-State: (1) falsely told Julie that a judgment would be entered against her on the small claims return date in violation of § 1692e(2)(A); (2) falsely implied that her wages might be garnished in violation of §§ 1692e(4) & (5); and (3) attempted to collect an amount greater than that owed in violation of § 1692e(10). Defendant does not dispute the content of these conversations, but argues that a genuine question of material fact exists as to whether the statements were misleading or material. The court will, therefore, address each of the alleged misrepresentations in turn.

### 1. Statements regarding when judgment would be entered

Plaintiffs first highlight two statements that, they argue, incorrectly communicated when a judgment would be entered against the Spauldings for the amount owed. Specifically, they point to the transcript from the May 4, 2018, phone call in which Tri-State representative told Julie, "Yes, [the full balance] would need to be paid in full prior to the court date with guaranteed funds in order to stop the judgment." (Addis Decl., Ex. A (dkt. #50-1) 7.) They also point to the May 11, 2018, call in which Tri-State said: "Yeah, unless the account's paid in -- all the balance is paid in full prior to the court date with guaranteed funds, the judgment would be entered if it wasn't paid . . . ." (*Id.* at 26-27.)

Plaintiffs interpret the "court date" referenced by the Tri-State representatives to mean the May 23, 2018, return date listed on the complaint. According to plaintiffs, the Marathon County local rules provide that *only* if a debtor *fails to appear* on the return date

will default judgment be entered on the return date. Marathon County Circuit Court Rules § 7.01 (2019). Plaintiffs also point out that, "[o]ther than if the defendant fails to show, the rules do not contemplate a judgment automatically being entered on the return date." (Pls.' Br. (dkt. #45) 3-4.) Therefore, plaintiffs argue, "Tri-State falsely informed [Julie] that a judgment would be entered against her at the return date for the small claims matter." (*Id.* at 3.)

Plaintiffs do not explain why an unsophisticated consumer would have concluded that the "court date" referred to by Tri-State during the phone calls meant the "return date." To be sure, at the beginning of the May 4 phone conversation, Tri-State informed Julie "[y]ou have court May 23rd," which was the return date. (Addis Decl., Ex. A (dkt. #50-1) 5.) And the Marathon County complaint -- which displays the May 23 return date -- was referenced during both the May 4 and May 11 phone conversations. Without more, however, the court is reluctant to conclude that this is the *only* reasonable interpretation. An unsophisticated consumer could potentially have interpreted Tri-State's references to a "court date" to mean the trial date, or the date the judgment would be entered. At least without placing the statement in context, it is simply not obvious that Tri-State's reference to a "court date" would be understood to mean the May 23 return date.

In assessing plaintiffs' claim that Tri-State communicated false information to Julie, it may also be helpful to determine if and when a judgment actually would have been entered against the Spauldings. *See Marquez*, 836 F.3d at 812 (whether a statement violates § 1692e is a fact-bound inquiry). First, the record suggests that a judgment would likely have been entered at some point if the balance remained unpaid, since the Spauldings

never formally contested the validity of the principal amount of the debts that Tri-State was seeking to collect. (*See* Helgeson Decl. II (dkt. #95) ¶ 8.) And Julie did not express any intention on the phone calls (or otherwise) to contest the debts at trial. Second, as to the timing of the judgment, Wis. Stat. Ch. 799 suggests that a small claims trial and subsequent judgment may in some circumstances be entered on the return date. *See* Wis. Stat. § 799.21(2) ("the case may, with the consent of all the parties, be tried on the return day"); § 799.215 (judgment may be given orally immediately following trial); and § 799.24(1) (judgment shall be entered "immediately" when a judgment is rendered). Moreover, even if the trial does not occur on the return date, Marathon County local rules provide that "small claims trials shall be scheduled before the court commissioner two weeks after the return date, or as soon thereafter as the court commissioner's calendar will allow." Marathon County Circuit Court Rules § 4.75 (2019).

Against this backdrop, and viewing the facts in the light most favorable to the defendant as the non-moving party, a genuine issue of fact exists as to whether Tri-State's statements would be materially misleading to an unsophisticated consumer. Tri-State told Julie that a judgment "would" be entered if she did not pay in time, and the evidence generally suggests that nonpayment would likely have led to a judgment. Tri-State told Julie that the deadline was the "court date"; whether this meant the return date or some other court date is unclear at best, and since the statutes and rules governing small claims actions suggest that a judgment could (if not necessarily would) be entered on the return date. As importantly, if not entered on the return date, the evidence suggests it would be tried shortly thereafter, calling into question whether any arguable misrepresentation by

Tri-State was material or would mislead an unsophisticated consumer. As the Seventh Circuit instructs, "[w]hen it is neither clear that a challenged statement is misleading nor clear that it is not, the question whether it is misleading is one of fact." *Muha*, 558 F.3d at 628. Accordingly, the court will deny plaintiffs' motion as to this claim.

### 2. Statement regarding garnishment

Plaintiffs next argue that Tri-State misled Julie into thinking that her wages would be garnished after judgment was entered on the debt. During the phone call with Julie, Tri-State said, "Otherwise we can set up arrangements to avoid garnishment in the future, after that judgment's entered." (Addis Decl., Ex. A (dkt. #50-1) 8.) The court does not agree that plaintiffs have proven no reasonable jury could find against it on this claim. Plaintiffs present no reason why an unsophisticated consumer would not understand the statement literally -- that garnishment was a possibility, but that arrangements could be set up to avoid it.

Moreover, plaintiffs have not shown that this is false or misleading. To the contrary, Wisconsin law authorizes garnishment actions against debtors, *see generally* Wis. Stat. Ch. 812, and the contract between Radiology Associates and Tri-State suggests that Tri-State pursues garnishment in some circumstances. (*See* Helgeson Decl., Ex. A (dkt. #51-1) 2 ("Upon receiving approval from [Radiology Associates], [Tri-State] will pursue the process of litigation and garnishment to collect the debt.").) Plaintiffs have offered no proof to show that garnishment was for some reason off the table in this case. Therefore, the court will deny plaintiffs' motion on this statement as well.

### 3. Statement regarding amount of debt owed

Plaintiffs' final claim of misrepresentation regards Tri-State's statement about the amount of debt owed by the Spauldings. Plaintiffs argue that: (1) Tri-State "attempted to collect the filing fees as part of what was currently due before the filing fees had been assessed by the court"; and (2) "Tri-State was continuing collection on an account that had been paid a week earlier." (Pl.'s Br. (dkt. #45) 4.) Plaintiffs' first argument is linked to their § 1692f(1) claim, which, as discussed above, prohibits the collection of any fee or other expense unless such amount is expressly authorized by an agreement or permitted by law. In light of the court's decision that Tri-State was authorized by law to attempt to collect on the court filing fee before it was formally taxed by the state court, the court will deny plaintiffs' motion for summary judgment. However, this conclusion does not prohibit plaintiffs from arguing at trial that Tri-State's statements as to its entitlement or the timing of its entitlement to court costs were otherwise false and misleading under § 1692e.

Plaintiffs' second argument is that during Julie's May 11 and May 17 phone calls with Tri-State, it attempted to collect on a $504.06 debt that Julie had previously paid to Radiology Associates. Defendant generally argues that in the broader context of the phone calls, an unsophisticated consumer would not be misled into thinking that she still owed the $504.06 to Tri-State. In particular, the transcripts show that during the May 11 phone call, Julie informed Tri-State that only "ten minutes" earlier, she had paid the $504.06 amount directly to Radiology Associates. After receiving this information, Tri-State informed Julie that if it could confirm the $504.06 payment was applied to her account, then it would be so credited to her account, but that she would still have a remaining

balance due.  (Addis Decl., Ex. A (dkt. #50-1) 13-28.)  Six days later, Julie called Tri-State back to ask about her balance.  Tri-State informed Julie that she owed $1,002.11, a balance that still included the $504.06 debt Julie had previously paid to Radiology Associates.

Again, the question at hand is whether an unsophisticated consumer would have been misled by Tri-State's statements.  Given the timing of Julie's payment and the contents of the phone calls, a triable issue of fact exists.  A reasonable jury might find that an unsophisticated consumer would understand that there would be a delay in the $504.06 payment being communicated to Tri-State and, therefore, would not be misled by Tri-State's representations that this debt was still owed.  On the other hand, a reasonable jury might find Tri-State's communications that Julie needed to pay $1,002.11 now, given the impending May 23rd court appearance, even after her $504.06 payment to Radiology Associates, thereby leading an unsophisticated consumer to feel pressure to pay the full $1,002.11 amount to Tri-State to avoid legal consequences.  This is essentially a question of fact, and the court will accordingly deny plaintiffs' motion for summary judgment as to this claim.

## II. Bona Fide Error Defense

Section 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  This defense has three elements: (1) intentionality; (2) bona fide or good faith

error; and (3) reasonable procedures. *See Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018).

To counter plaintiffs' FDCPA claims, defendant asserts here that, even if it did violate the FDCPA, any claimed violation constituted no more than "a bona fide error" under 15 U.S.C. § 1692k(c), from which it should not be held liable. Plaintiffs have moved for summary judgment on this bona fide error defense. Since this is an affirmative defense, defendant must demonstrate that there is a genuine issue of material fact as to each element of the defense to survive summary judgment. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 599 (2010) (bona fide error is an affirmative defense to which proponent bears burden of proof).

However, defendant has perhaps misunderstood its burden, having proffered *no* evidence *or* even arguments regarding the first and second elements of the defense, arguing only that there is a material dispute of fact as to whether Tri-State maintained reasonable procedures. (*See* Def.'s Opp'n (dkt. #65) 19.) Ordinarily, this failure at the "put up or shut up" moment of summary judgment, *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), would result in the grant of summary judgment in plaintiffs' favor as to the bona fide error defense. However, since there are substantial disputes as to the merits of many of defendant's alleged underlying FDCPA violations that both implicate elements one and two of the defense *and* require a trial anyway, the court will deny plaintiffs' motion.

### III. Abuse of Process

Finally, plaintiffs have moved for summary judgment on defendant's abuse of process counterclaim. In a previous order, the court granted leave for defendant to proceed on this counterclaim. (Dkt. #46.) However, upon closer consideration of defendant's proffered facts and the applicable law, the court will grant summary judgment in favor of plaintiffs.

Abuse of process occurs when an individual "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." *Brownsell v. Klawitter*, 102 Wis. 2d 108, 114, 306 N.W.2d 41 (1981). Two elements are required, "(1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process." *Strid v. Converse*, 111 Wis. 2d 418, 426, 331 N.W.2d 350 (1983). The fact that a process "has been set in motion in proper form, with probable cause, and even with ultimate success," does not necessarily defeat an abuse of process claim, since even a meritorious process may be "perverted to accomplish an ulterior purpose for which it was not designed." *Id.* (quoting *Maniaci v. Marquette University*, 50 Wis. 2d at 299, 184 N.W.2d 168 (1971)). Nonetheless, Wisconsin courts have cautioned that abuse of process claims are disfavored and must be narrowly construed so as to avoid the "potential chilling effect on the right of access to the courts." *Schmit v. Klumpyan*, 2003 WI App 107, ¶ 13, 264 Wis. 2d 414, 663 N.W.2d 331.

A variety of facts are proffered by defendant in support of its claim, including that: (1) the Spauldings have extensive experience with the Wisconsin judicial system, having previously been parties to ten small claims collection actions and three foreclosure actions;

(2) the Spauldings retained a credit repair company and legal counsel, both of which are sophisticated parties and knowledgeable about the FDCPA; (3) letters were sent to two credit reporting agencies on behalf of Bryant, claiming that the Radiology Associates' debts on his credit report were disputed and should be excluded from the report, although Bryant had not in fact disputed the debts with Radiology Associates; (4) during her phone conversations with Tri-State, Julie tried to trick the representatives into violating the FDCPA in various ways; and (5) plaintiffs tried to dismiss defendant's counterclaim by a frivolous motion, which they withdrew only after defendant had briefed the issue.

Defendant tosses out a handful of theories as to how these facts support its abuse of process claims. First, defendant suggests that the Spauldings filed the instant federal lawsuits with the improper purpose of seeking "fabricated damages." (Def.'s Am. Counterclaims (dkt. #48) 12, 17.) But, certainly, filing a lawsuit to seek damages is not a misuse of the legal process. Defendant's suggestion that the damages were "fabricated" is apparently based on its position that the Spauldings induced Tri-State into violating the FDCPA. Even if true, however, an allegation of an improperly obtained claim does not amount to abuse of process. The Wisconsin Supreme Court has held that the gravamen of such a claim "is the misuse of process, no matter how properly obtained." *Brownsell v. Klawitter*, 102 Wis. 2d 108, 114, 306 N.W.2d 41, 44 (1981) (quoting Restatement (Second) Torts, § 682 cmt. A).[8]

---

[8] If defendant is correct that the Spauldings did indeed intentionally induce Tri-State into violating the FDCPA, it does in some ways seem unjust that the Spauldings can collect statutory damages. But defendant's position sounds more as an unclean hands defense -- arguing that the Spauldings should not receive relief because they acted unethically -- which the court previously rejected on the grounds that the defense is not available against FDCPA claims. (*See* dkt. #46); *see also Francisco*

Second, defendant suggests that the Spauldings were in some way "playing" the system "in an effort to avoid paying their Radiology Associates debts and improve their credit history and score," as well as create "leverage to minimize or avoid liability in the Marathon County Small Claims Court Action." (Def.'s Opp'n (dkt. #98) 10, 13.) These arguments are perhaps closer to the mark to the extent that they suggest the Spauldings brought FDCPA lawsuits for some ulterior gain -- whether it be to avoid paying their debts, improve their credit history, and/or avoid liability in state court collection actions.

However, that a plaintiff has an *incidental* ulterior purpose in bringing a lawsuit does not render his lawsuit an abuse of process. *See Schmit v. Klumpyan*, 2003 WI App 107, ¶ 21, 264 Wis. 2d 414, 663 N.W.2d 331 ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to [the plaintiff].") (quoting Restatement (Second) Torts § 682 cmt. b (1977)). Rather, abuse of process arises where a person uses a legal

---

*v. Midland Funding, LLC*, 2019 U.S. Dist. LEXIS 20601, *15 (rejecting unclean hands defense for FDCPA claims); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 749 (N.D. Ill. 2003) (same). Defendant's position could also be read as an attempt to read a fraud exception into the FDCPA, which the Seventh Circuit has rejected. *See Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) ("[I]t is time we put to rest any lingering doubts as to the nonexistence of a fraud exception to the FDCPA. . . . Its language focuses primarily, if not exclusively, on the conduct of debt collectors, not debtors. Absent some textual directive in the FDCPA, we will not alter that focus, for our task is to interpret the words of Congress, not add to them."); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1330 (7th Cir. 1997) ("[W]e think that such a fraud exception would violate the spirit of the Act. The Act's singular focus is on curbing abusive and deceptive collection practices, not abusive and deceptive consumer payment practices."). Still, nothing prevents Tri-State from arguing, nor this court from considering, whether the specific violations here and Spauldings' arguable motivations warrant a reduced, or even no, monetary penalty. *See* 15 U.S.C. § 1692k(b) (court shall consider enumerated factors *and "other relevant factors"* in "determining the amount of liability in any action" under the FDCPA) (emphasis added); *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1033-34 (N.D. Ill. 2015) (noting that § 1692k(b) is "is multifaceted and open-ended, granting the factfinder considerable discretion to set statutory damages").

process "*primarily* to accomplish a purpose for which it is not designed."  *Brownsell*, 102 Wis. 2d at 114 (emphasis added).  Here, defendant makes no such argument.  To the contrary, its position that plaintiffs brought the lawsuit to seek damages (or as defendant alleges, "fabricated" damages) would seem to undermine any argument that the litigation was primarily litigated for ulterior purposes.

Finally, defendant points out that plaintiffs filed a motion to dismiss defendant's counterclaim for lack of subject matter jurisdiction, then withdrew the motion only after defendant briefed the issue.  Defendant specifically notes that plaintiffs' motion "ignored recent and important Seventh Circuit precedent" and "mischaracterized Tri-State's Amended Counterclaim as a permissive counterclaim while failing to cite and disclose recent and important Seventh Circuit and other case law."  (Def.'s Opp'n (dkt. #98) 18.) This, defendant argues, "is further evidence of abuse of process."  (*Id.*)  Although frivolous motions may in some circumstances arise to an abuse of process, *see, e.g.*, *Shivers v. United States*, 427 F. App'x 697, 699 (11th Cir. 2011), here defendant has failed again to argue the basic elements of an abuse of process claim -- again, that plaintiffs filed the motion primarily to accomplish an ulterior purpose.  Summary judgment is not a "practice run," *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005), and defendant's failure to argue and present facts that are essential to its claim cannot be excused.

Defendant requests, in the alternative, that the court defer ruling on plaintiffs' motion for summary judgment.  Under Federal Rule of Civil Procedure 56(d), the court may defer consideration of a motion for summary judgment if a nonmovant shows "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify

its opposition." Here, defendant has presented a declaration by its attorney of record noting that: (1) the court did not authorize defendant to amend its counterclaim to explicitly include its abuse of process allegation until August 23, 2019, and plaintiffs moved for summary judgment on the counterclaim six days later; (2) defendant replied to plaintiffs' later withdrawn motion to dismiss for lack of subject matter jurisdiction on September 9, 2019, and defendant has been actively involved in preparing various briefings in this case; and (3) defendant has noticed up the depositions of three "key" witnesses, which it argues is relevant to its "allegations in its abuse of process counterclaim."[9] (Addis Decl. II (dkt. #94) ¶¶ 20-27.)

Defendant's suggestion that it did not have sufficient time to complete discovery is undercut by the fact that the court authorized discovery on defendant's proposed (at the time) abuse of process counterclaim on April 10, 2019. (Dkt. #30.) Defendant has not offered "specified reasons" why twenty-five weeks of discovery was insufficient. That plaintiffs filed a motion to dismiss defendant's counterclaim also does not explain why defendant was unable to pursue discovery between April 2019 and September 2019, when plaintiffs' motion was filed. Finally, defendant's broad statement that the deposition testimony of the three Credit Matters, Inc., employees will be relevant to defendant's

---

[9] Defendant also argues that the testimony of these witnesses will be relevant to determining whether the Spauldings received the three debt validation notices. (*See* Def.'s Opp'n (dkt. #115) 19.) Because defendant does not explain how additional evidence regarding these letters would be relevant to its abuse of process claims, the court does not consider this an adequate reason to defer ruling on the current motion. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) (district court properly denied additional discovery before ruling on summary judgment motion where nonmovant's proposed discovery was irrelevant to the motion).

"allegations in its abuse of process counterclaim" is not sufficient to carry defendant's burden under Rule 56(d).

Speculation that additional relevant facts may be uncovered is not a proper basis for granting a Rule 56(d) motion. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005); *see also Bluestein v. Cent. Wis. Anesthesiology*, 296 F.R.D. 597, 604 (W.D. Wis. 2013) ("[P]laintiff's only support for her request is a conclusory statement that the depositions are 'necessary to establish that the Defendant's stated reasons for [plaintiff's] termination are pretext for disability and sex discrimination.' This bald statement is insufficient to show that the depositions are necessary at this stage. She has not met the standard for obtaining relief under Rule 56(d), which, at a minimum, requires an explanation of how these witnesses could help her case at summary judgment.")

Because defendant has failed to offer specific reasons why "it cannot present facts essential to justify its position," Fed. R. Civ. P. 56(d), the court will deny defendant's request that the court defer ruling on plaintiffs' summary judgment motion on its abuse of process counterclaims.[10]

---

[10] In the unlikely event that defendant obtains truly new, material information before the close of discovery that would resurrect its abuse of process claim, its remedy would be a motion to reconsider or an argument for mitigation of any damage award.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for summary judgment (dkt. #43) is DENIED.

2) Defendant's partial motion for summary judgment (dkt. #49) is DENIED.

3) Plaintiffs' motion for summary judgment (dkt. #86) as to defendant's counterclaim is GRANTED.

Entered this 11th day of December, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge